IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VICKIE MAYES,<br><br>      Plaintiff,<br><br>  vs.<br><br>1715 NORTHSIDE DRIVE, INC.;<br>A-1 ENTERTAINMENT, LLC; C.B.<br>JONES II; and CARMEN<br>POPOVITCH,<br><br>      Defendants. | Civil Action File No.<br><br><br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff Vickie Mayes ("Ms. Mayes"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against 1715 Northside Drive, Inc. d/b/a Dreams (hereinafter "1715"); A-1 Entertainment, LLC d/b/a Dreams (hereinafter "A-1"); C.B. Jones II ("Mr. Jones"); and Carmen Popovitch ("Ms. Popovitch") (collectively "Defendants"), and shows the Court as follows:

## INTRODUCTION

1.

Ms. Mayes brings this action under the Fair Labor Standards Act of 1938 (as amended) (29 U.S.C. § 201 *et seq*., ("the FLSA") to recover due but unpaid

minimum wage and an additional like amount as liquidated damages and to be reimbursed for her costs of litigation, including her reasonable attorneys' fees.

2.

Ms. Mayes also seeks to recover kickbacks that Defendants forced her to pay Defendants and their employees in the form of "fees," as well as monies that Defendants forced her to pay into an illegal mandatory tip pool in violation of the minimum wage provisions of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*).

3.

Ms. Mayes will also show that Defendants perpetrated a scheme to avoid the requirements of the FLSA by misclassifying her as independent contractor instead of an employee.

4.

In accordance with this scheme, Defendants willfully filed fraudulent tax information returns (*i.e.,* Form 1099) with respect to her in violation of 26 U.S.C. § 7434.

## JURISDICTION AND VENUE

### 5.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA §16(b), 29 U.S.C. §216(b), 28 U. S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

### 6.

Venue properly lies in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391 because Defendants conduct business in this judicial district; and all the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

### 7.

Ms. Mayes is an individual residing in Bartow County, Georgia.

### 8.

1715 is a corporation organized under the laws of Georgia.

### 9.

1715 can be served with process through its registered agent, Dewayne N. Martin, 55 Ivan Allen, Jr. Boulevard, Suite 820, Atlanta, Georgia 30308.

10.

1715 is subject to the personal jurisdiction of this Court.

11.

A-1 is limited liability company organized under the laws of Georgia.

12.

A-1 can be served with process through its registered agent, Ms. Popovitch, at 10625 Roxburgh Lane, Roswell, GA 30076.

13.

A-1 is subject to the personal jurisdiction of this Court.

14.

Mr. Jones is a resident of Pickens County, Georgia.

15.

Mr. Jones can be served with process at his residence located at 15 Lone Oak Way, Fairmount, Georgia 30139, or wherever he can be found.

16.

Mr. Jones is subject to the personal jurisdiction of this Court.

17.

Ms. Popovitch is a resident of Fulton County, Georgia.

18.

Ms. Popovitch can be served at her residence located at 10625 Roxburgh Lane, Roswell, GA 30076, or wherever she can be found.

19.

Ms. Popovitch is subject to the personal jurisdiction of this Court.

## **FACTUAL ALLEGATIONS**

20.

An adult entertainment establishment is located at 1715 Northside Drive, Atlanta, GA and operates under the name "Dreams" ("the Club").

21.

The Club formerly operated under the name "Diamond Club".

22.

Ms. Mayes worked at the Club from early-October 2010 through late-October 2014.

23.

Ms. Mayes first worked at the Club as a bartender and then later as a waitress.

24.

At all times material to this action and prior to early December 2013, Mr.

Jones and 1715 jointly owned and operated the Club.

25.

In early December 2013, Mr. Jones sold his interests in 1715 and the Club to

Ms. Popovitch and A-1.

26.

At all times material to this action subsequent to early December 2013 Ms.

Popovitch, 1715, and A-1 have owned and operated the Club.

27.

At all times material hereto prior to early December 2013, Mr. Jones

exercised complete control over the operations and employment practices and

procedures of the Club.

28.

At all times material hereto prior to early December 2013, Mr. Jones

exercised authority and supervision over Ms. Mayes' compensation.

29.

At all times material hereto prior to early December 2013, Mr. Jones was an

"employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

30.

At all times material hereto subsequent to early December 2013, Ms. Popovitch has exercised complete control over the operations and employment practices and procedures of the Club.

31.

At all times material hereto subsequent to early December 2013, Ms. Popovitch has scheduled Ms. Mayes' working hours or supervised the scheduling of Plaintiff's working hours.

32.

At all times material hereto and subsequent to early December 2013, Ms. Popovitch has exercised authority and supervision over Ms. Mayes' compensation.

33.

At all times material hereto and subsequent to early December 2013, Ms. Popovitch has been an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

34.

The primary business of the Club is to provide entertainment in the form of nude and semi-nude dancers and the sale of food and alcoholic beverages.

35.

Ms. Mayes was an employee of Mr. Jones from early-October 2010 through early-December 2013.

36.

Ms. Mayes was an employee of 1715 from early-October 2010 through late-October 2014.

37.

Ms. Mayes was an employee of Ms. Popovitch from early-December 2013 through late-October 2014.

38.

Ms. Mayes was an employee of A-1 from early-December 2013 through late-October 2014.

39.

At all times material hereto, 1715 was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

40.

At all times material hereto, A-1 was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

41.

Throughout 2014, the Club had two or more employees who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

42.

During 2014, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

43.

During 2014, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

44.

Throughout 2013, the Club had two or more employees who regularly sold food products and alcoholic beverages that were produced and shipped from

outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

45.

During 2013, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

46.

During 2013, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

47.

Throughout 2012, the Club had two or more employees who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

48.

During 2012, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A

49.

During 2012, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

50.

Throughout 2011, the Club had two or more employees who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

51.

During 2011, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

52.

During 2011, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

53.

Throughout 2010, the Club had two or more employees who regularly sold food products and alcoholic beverages that were produced and shipped from

outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

54.

During 2010, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

55.

During 2010, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

56.

During 2014, the Club has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

57.

During 2013, the Club has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

58.

During 2012, the Club has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

59.

During 2011, the Club has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

60.

During 2010, the Club has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

61.

At all times material to this action, Defendants did not employ Ms. Mayes in a manner so as to make her exempt from the minimum wage requirements of the FLSA by reason of any exemption set forth in 29 U.S.C. § 213.

62.

At all times material to this action, Defendants did not employ Ms. Mayes in a manner so as to make her exempt from the maximum hours requirements of the FLSA by reason of any exemption set forth in 29 U.S.C. § 213.

63.

At all times material hereto, Defendants compensated Ms. Mayes through the payment of the FLSA minimum wage as reduced by the FLSA tip credit, yielding an hour rate of $2.13.

64.

Defendants failed to inform Ms. Mayes of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

65.

At all times material hereto, Defendants required Ms. Mayes to pay a portion of her tips as "fees" to the Club and its owners, agents, and employees.

66.

At all times material hereto, Defendants required Ms. Mayes to pay "fees" to security personnel, parking attendants, and managers.

67.

At all times material hereto, Defendants required Ms. Mayes to reimburse the Club for shortages in her cash register.

68.

On at least one occasion in 2014, Defendants required Ms. Mayes to assist with renovation work the Club for approximately 12 hours without receiving tips or otherwise interacting with customers.

69.

At all times material hereto, Defendants required Ms. Mayes to pay a portion of her tips for reasons other than the pooling of tips among employees who customarily and regularly received tips.

70.

At all times material hereto, Defendants required Ms. Mayes to pay the Club a percentage of large tips received from customers that had been remitted to the Club by check and credit card.

71.

Ms. Mayes frequently received less than minimum wage because of the mandatory payment of a portion of her tips as directed by Defendants.

72.

Defendants terminated Ms. Mayes in October 2014.

73.

Since her termination, Ms. Popovitch, 1715, and A-1 have refused to issue Ms. Mayes her final paycheck.

74.

At all times material hereto, Defendants have failed to pay Ms. Mayes minimum wages as required by 29 U.S.C. § 201 et seq.

75.

At all times material hereto, Defendants have willfully failed to pay Ms. Mayes minimum wages as required by 29 U.S.C. § 201 et seq.

76.

At all times material hereto, Defendants have failed to "post and keep posted a notice explaining the [FLSA] ... in [a] conspicuous place[]," as required by 29 CFR § 516.4.

77.

In early 2014, Brittany Thompson—another employee of the Club—filed a putative collective action under the FLSA against Defendants in the United States

District Court for the Northern District of Georgia styled *Thompson et al. v. 1715 Northside Drive, Inc. et al.*, Civil Action No. 1:14-cv-00390-RWS.

78.

Shortly after the initiation of that action, Ms. Popovitch, 1715, and A-1 terminated Ms. Thompson's employment.

79.

Ms. Popovitch, 1715, and A-1 terminated Ms. Thompson's employment in retaliation for her filing that collective action.

80.

Ms. Popovitch, 1715, and A-1 terminated Thompson's employment in order to intimidate other employees of the Club from asserting their rights under the FLSA.

81.

Shortly after the initiation of that action, Ms. Popovitch, 1715, and A-1 banned Ms. Thompson from the premises of the Club.

82.

Ms. Popovitch, 1715, and A-1 banned Ms. Thompson from the premises of the Club in retaliation for filing that collective action.

83.

Ms. Popovitch, 1715, and A-1 banned Ms. Thompson from the premises of the Club in order to intimidate other employees of the Club from asserting their rights under the FLSA.

84.

Ms. Popovitch, 1715, and A-1 caused a notice to be posted in the Club stating that Thompson was banned from the premises.

85.

Ms. Popovitch, 1715, and A-1 posted this notice in order to intimidate employees of the Club from asserting their rights under the FLSA.

86.

Later in 2014, Kelly Wittenmyer—another employee of the Club—filed a consent to opt-in to Thompson's putative collective action.

87.

Shortly thereafter, Ms. Popovitch, 1715, and A-1 terminated Ms. Wittenmyer.

88.

Ms. Popovitch, 1715, and A-1 terminated Ms. Wittenmyer in retaliation for filing her consent to opt-in in that collective action.

89.

Ms. Popovitch, 1715, and A-1 terminated Ms. Wittenmyer in order to intimidate other employees of the Club from asserting their rights under the FLSA.

90.

Ms. Popovitch, 1715, and A-1, also banned Ms. Wittenmyer from the Club's premises.

91.

Ms. Popovitch, 1715, and A-1, banned Ms. Wittenmyer from the Club's premises in retaliation for her participation in the putative FLSA collective action.

92.

Ms. Popovitch, 1715, and A-1, banned Ms. Wittenmyer from the Club's premises in order to intimidate other employees of the Club from asserting their rights under the FLSA.

93.

In 2011, 1715 filed a Form 1099-MISC with the Internal Revenue Service categorizing certain tips earned by Ms. Mayes in 2010 as nonemployee compensation.

94.

In 2012, 1715 filed a Form 1099-MISC in lieu of a Form W-2 with the Internal Revenue Service categorizing certain tips earned by Ms. Mayes in 2011 as nonemployee compensation.

95.

In 2013, 1715 filed a Form 1099-MISC in lieu of a Form W-2 with the Internal Revenue Service categorizing certain tips earned by Ms. Mayes in 2012 as nonemployee compensation.

96.

In 2014, 1715 filed a Form 1099-MISC in lieu of a Form W-2 with the Internal Revenue Service categorizing certain tips earned by Ms. Mayes in 2013 as nonemployee compensation.

97.

1715's characterization Ms. Mayes' tips as nonemployee compensation— rather than employee compensation in a Form W-2—was false, because Ms. Mayes was an employee of 1715 and not an independent contractor.

98.

1715 intentionally, willfully, fraudulently, and maliciously misclassified Ms. Mayes as an independent contractor and filed fraudulent Forms 1099 with respect

to Ms. Mayes for the purpose of 1715's own enrichment, and to provide a fraudulent rationale for their illegal withholding of portions of Ms. Mayes' tips.

## COUNT I

## FAILURE TO PAY MINIMUM WAGE (29 U.S.C. § 206)

99.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

100.

At all times material hereto, Ms. Mayes was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

101.

At all times material hereto, Defendants failed to compensate Ms. Mayes at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

102.

At all times material hereto, Defendants intentionally and willfully failed to compensate Ms. Mayes at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

103.

At all times material hereto, Defendants required Ms. Mayes to pay a portion of her tips to Dreams employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

104.

Defendants' requirement that fees to be paid by Ms. Mayes to Defendants and their agents and employees violated the "free and clear" requirement of 29 CFR 531.35.

105.

Ms. Mayes is entitled to payment of minimum wages for all hours worked in an amount to be determined at a trial by jury, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

106.

Ms. Mayes is entitled to reimbursement of all fees and fines paid to Defendants and their agents and employees, in addition to all other unpaid wages.

107.

As a result of Defendants' intentional and willful nonpayment of minimum wages as alleged above, Ms. Mayes is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

108.

Defendants are liable to Ms. Mayes for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II

## FRAUDULENT FILING OF TAX INFORMATION RETURNS

## (26 U.S.C. § 7434)

109.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

110.

For tax years 2010, 2011, 2012, and 2013, 1715 has filed Forms 1099-MISC with the Internal Revenue Service categorizing certain tips earned by Ms. Mayes as nonemployee compensation.

111.

At all times material hereto, Ms. Mayes has been an employee of 1715.

112.

At all times material hereto, all tips Ms. Mayes received have been employee compensation.

113.

1715 intentionally, willfully, and fraudulently misclassified Ms. Mayes' tip earnings as nonemployee compensation and filed fraudulent Forms 1099 with respect to Ms. Mayes for the purpose of its own enrichment.

114.

Pursuant to 26 U.S.C. § 7434, because of 1715's intentional, willful, fraudulent, and malicious filing of false tax information returns with respect to Ms. Mayes, she is entitled to damages up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as costs of litigation and reasonable attorney's fees.

WHEREFORE, Ms. Mayes prays that:

(a)     That her claims be tried before a jury;

(b)     That she be awarded an amount to be determined at trial against Defendants jointly and severally in unpaid minimum wage under the FLSA, plus an additional like amount in liquidated damages and pre- and post-judgment interest thereon;

(c)     That she be awarded an amount to be determined at trial against Defendants jointly and severally for money illegally withheld from her tips;

(d)    That she be awarded an amount to be determined at trial against 1715

        for no less than $5,000 for each fraudulent tax information return it

        filed with respect to Ms. Mayes;

(e)    That she be awarded her costs of litigation, including her reasonable

        attorney's fees; and

(f)    For such other and further relief as is just and equitable.


                                Respectfully submitted,


                                *DELONG CALDWELL BRIDGERS &*
                                *FITZPATRICK, LLC*

                                */s/ Charles R. Bridgers*
                                Charles R. Bridgers
                                Ga. Bar No. 080791

3100 Centennial Tower           */s/ Kevin D. Fitzpatrick, Jr.*
101 Marietta Street             Kevin D. Fitzpatrick, Jr.
Atlanta, Georgia 30303          Ga. Bar No. 262375
(404) 979-3171
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com   */s/ Matthew W. Herrington*
kevin.fizpatrick@dcbflegal.com  Matthew W. Herrington
matthew.herrington@dcbflegal.com  Ga. Bar No. 275411

                                **Counsel for Plaintiff**